UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



------------------------------------------------------------------X

UNITED STATES OF AMERICA,

      -against-

CONSTANTIN CHEESE,

                          Defendant.

**MEMORANDUM & ORDER**

**18-CR-33-2 (NGG)**

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Constantin Cheese is charged in Counts Eleven and Twelve of a Fourteen-count indictment with attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Eleven) and knowingly and intentionally using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count Twelve). The charges arise from Cheese's alleged participation in a home invasion in Port Washington, New York. Cheese moves this court to dismiss Count Twelve of the indictment on the grounds that attempted Hobbs Act robbery is not a crime of violence under *United States v. Davis*, 139 S. Ct. 2319 (2019). (*See* Def. Mot. to Dismiss Count Twelve ("Mot.") (Dkt.189); Gov't Opp'n to Mot. to Dismiss Count Twelve ("Opp.") (Dkt. 216); Def. Resp. in Support re: Mot. to Dismiss ("Reply") (Dkt. 220).) The court held oral argument on the motion on December 19, 2019. (Dec. 19, 2019 Min. Entry (Dkt. 249).) Since that time, Cheese and the Government have filed additional letters to bring supplemental authority to the court's attention. (*See* Def. Letter re: Suppl. Auth. ("Def. Suppl.") (Dkt. 250); Gov't Letter re: Supp. Auth. ("Gov't Suppl.") (Dkt. 266); Def. Resp. re: Supp. Auth. ("Def. Suppl. Resp.") (Dkt. 267).) In addition, several of Cheese's co-defendants have filed letters joining in Cheese's motion and asking the court to expand the motion to include Counts Eight and Fourteen of the Superseding Indictment, which similarly use attempted Hobbs Act robbery as a Section 924(c) predicate. (*See* Dkts. 261-

263). Count Ten likewise relies on attempted Hobbs Act robbery as a Section 924(c) predicate, and the court considers all three Counts—Eight, Ten, and Fourteen—in tandem with Cheese's motion to dismiss Count Twelve.

Cheese also moves for severance under both the Federal Rules of Criminal Procedure and the Speedy Trial Act. (*See* Mot. at 11.) Finally, Cheese moves, *pro se*, to dismiss the indictment in its entirety. (*See* Def. Pro Se Mot. to Dismiss Indictment ("Pro Se Mot.") (Dkt. 153); Def. Am. Pro Se Mot. to Dismiss Indictment ("Am. Pro Se Mot.") (Dkt. 192).) Based on the following reasons, Defendant's motion to dismiss Count Twelve of the indictment is GRANTED, and Counts Eight, Ten, Twelve, and Fourteen are struck as to all Defendants. Defendant's motion to sever is DENIED and Defendant's *pro se* motions to dismiss the indictment are DENIED.

## I.    BACKGROUND

Cheese is alleged to have participated in an attempted robbery of a home in Port Washington, New York on October 16, 2017. (*See* Compl. (Dkt. 1).)[1] The government alleges Cheese and co-defendants traveled to the home in question by car under the belief that it was a stash house containing both drugs and money. (*Id.*) Once there, Cheese and two co-defendants entered the home while two other co-defendants waited in the car. (*Id.*) While inside, Cheese and his co-conspirators allegedly brandished a weapon, demanded both narcotics and money, and restrained the individuals inside the house with zip-ties. (*Id.*) The plan allegedly collapsed when one of the victims freed himself from the zip-ties. (*Id.*) Cheese and his co-defendants fled the house. (*Id.*)

---

[1] The original indictment, which was filed on January 18, 2017, charged only Cheese and two other co-defendants—Samiek Hytmiah and Desmond Murchison. (*See* Original Indictment (Dkt. 17).) Murchison entered a plea of guilty on March 29, 2019. (Mar. 29, 2019 Min. Entry (Dkt. 70).) On July 11, 2019, the Government filed a Superseding Indictment that, among other things, added charges against 16 new defendants, including a charge for racketeering conspiracy with 12 racketeering acts against 11 of Cheese's co-defendants. (*See* Superseding Indictment (Dkt. 71).) One day later, Hytmiah entered a plea of guilty. (July 12, 2019 Min. Entry (Dkt. 168).)

## II. CHEESE'S MOTION TO DISMISS COUNT TWELVE

Cheese moves this court to dismiss Count Twelve of the indictment, which charges Cheese and four of his co-defendants with possession and brandishing of a firearm in furtherance of a "crime of violence" in violation of Section 924(c). 18 U.S.C. § 924(c)(1)(A). Because the reasoning underlying the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) precludes the Government from charging attempted Hobbs Act robbery as a predicate for a Section 924(c) violation, the court grants Cheese's motion.

### A. Legal Standard

Section 924(c) defines a "crime of violence" as a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). In *Davis*, the Supreme Court held that Subsection B ("the Residual Clause") was unconstitutionally vague. 139 S. Ct. at 2336. As a result, a "crime of violence" under Section 924(c) must satisfy Subsection (A) such that the crime "has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A) ("the Elements Clause").

The question before the court is whether attempted Hobbs Act robbery satisfies the Elements Clause. To answer that question, the court uses the "categorical approach." *See United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019) (applying the categorical approach to Hobbs Act robbery). The categorical approach "involves two steps: first [the court] identif[ies] the elements of the predicate conviction by determining the minimum criminal conduct a defendant must commit to be convicted; second, [the court] determine[s]

whether that minimum criminal conduct has as an element the use, attempted use, or threatened use of physical force." *United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019). Determining the minimal conduct necessary for conviction, "requires more than the application of legal imagination to the statute's language." *Hill*, 890 F.3d at 51 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (alterations adopted)). "To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues." *Id.* (internal quotation marks omitted) (alterations adopted).

The elements of attempt are straightforward: a defendant must (a) have the intent to commit the object crime and (b) engage in conduct amounting to a substantial step towards its commission. *See United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003). "[A] 'substantial step' must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Farhane*, 634 F.3d 127, 147 (2d Cir. 2011) (quoting *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980) (internal quotation marks omitted)).

### B. Discussion

The Government argues that attempted Hobbs Act robbery is a crime of violence "because it requires proof of intent to commit all the elements of the completed crime, Hobbs Act robbery, which constitutes a crime of violence under the Elements Clause." (Gov't Suppl. at 1-2). While at least one Circuit has adopted the Government's reasoning, *see United States v. Ingram*, No. 19-1403, 2020 WL 253380, at *3 (7th Cir. Jan. 17, 2020), the Second Circuit has not decided the issue, and district courts in this circuit to consider the issue have reached conflicting results. *Compare United States v. Jefferys*, No. 18-CR-359 (KAM), 2019 WL

5103822 (E.D.N.Y. Oct. 11, 2019) ("[T]he Second Circuit has . . . indicated that where a substantive offense is a crime of violence under 924(c), an attempt to commit that offense similarly qualifies under the elements clause." (citations omitted)); *and Crowder v. United States*, No. 16-CV-4403 (CM), 2019 WL 6170417 (S.D.N.Y. Nov. 20, 2019) ("[A] defendant who takes a 'substantial step' toward committing an inherently violent offense—such as Hobbs Act robbery—has at least 'attempted' or 'threatened' the use of force within the meaning of [Section 924(c)]."; *with United States v. Tucker*, No. 18-CR-0119 (SJ), 2020 WL 93951, at *18-19 (E.D.N.Y. Jan. 8, 2020) ("[G]iven the broad spectrum of attempt liability, the elements of attempt to commit robbery could clearly be met without any use, attempted use, or threatened use of violence." (citations and internal quotations omitted)); *and Lofton v. United States*, No. 04-CR-06063 (MAT), 2020 WL 362348, at *9 (W.D.N.Y. Jan. 22, 2020) ("[B]ecause attempted Hobbs Act robbery does not categorically entail the use, threatened use, or attempted use of force. . . it is not a crime of violence.") (citations omitted)).

The court declines to adopt the Government's reasoning. The Government's argument collapses the distinction between acts constituting an underlying offense and acts constituting an attempt of the underlying offense, which does not square with the Supreme Court's decision in *Davis*. Under *Davis*, the categorical analysis requires examination of the "minimal criminal conduct necessary for conviction under a particular statute." *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019). And, as the Defendant notes (Mot. at 8-9), one can take a "substantial step" towards committing attempted Hobbs Act robbery without "the use, attempted use, or threatened use" of physical force. *See, e.g., United States v. Gonzalez*, 441 F. App'x 31, 26 (2d Cir. 2011) (summary order) (finding evidence sufficient to convict defendants of attempted Hobbs Act robbery where "[D]efendants' reconnoitering at the scene of the

contemplated crime while in possession of paraphernalia which, under the circumstances, could serve no lawful purpose (including a real firearm, a starter pistol, and ski masks) constitute[d] a substantial step, and amply corroborate[d] their criminal purpose") (citing *United States v. Jackson*, 560 F.2d 112, 120-21 (2d Cir. 1977)); *United States v. Wrobel*, 841 F.3d 450, 453-55 (7th Cir. 2016) (upholding attempted Hobbs Act robbery conviction where defendants planned robbery, traveled across state lines for purpose of robbing a diamond merchant, but were stopped by law enforcement before the robbery was committed with hooded sweatshirts, a black hat, three pairs of gloves, and a pry bar). Because a defendant who takes a substantial step in furtherance of Hobbs Act robbery can do so without the use, threatened use, or attempted use of force, attempted Hobbs Act robbery cannot be a crime of violence under the categorical analysis. *See Tucker*, 2020 WL 93951 at *18-19.

This holding logically follows from the Second Circuit's decision in *Barrett* that conspiracy to commit Hobbs Act robbery is not a crime of violence under Section 924(c). The Government objects, arguing that the difference between conspiracy and attempt is that, unlike conspiracy, when a defendant attempts to commit Hobbs Act robbery, he *intends* to use, threaten to use, or attempt to use force. (Opp. at 20; Gov't Suppl. at 1). Yet, a defendant can be convicted of conspiracy or attempt without using or attempting to use force, even if he would have used (or attempted to use) force had he completed the commission of the offense. *See Barrett*, 937 F.3d at 128 (noting that there was no doubt that the conspiracy planned by Barrett and his co-conspirators—*i.e.*, the acts Barrett and his co-conspirators intended to do—was "violent, even murderous"); *Wrobel*, 841 F.3d at 455 (evidence that defendants "planned and intended" to forcibly rob victim was sufficient to support conviction for attempted Hobbs Act robbery).

The Government argues that the Seventh Circuit's recent decision in *Ingram* "refutes the defendant's argument that there is no distinction between conspiracy to commit Hobbs Act robbery and attempt to commit Hobbs Act robbery." (Gov't Suppl. at 1). To the contrary, *Ingram* merely repeats the logic that where the underlying crime is a crime of violence, an attempt to commit that crime must also be a crime of violence, because such an attempt "requires proof of intent to commit all elements of the complete crime." 2020 WL 253380, at *3. And, as discussed above, this rule fails to meaningfully grapple with the categorical approach. As Judge Jill Pryor on the Eleventh Circuit previously explained:

> We can easily imagine that a person may engage in an overt act—in the case of robbery, for example, overt acts might include renting a getaway van, parking the van a block from the bank, and approaching the bank's door before being thwarted—without having used, attempted to use, or threatened to use force. Would this would-be robber have *intended* to use, attempt to use, or threaten to use force? Sure. Would he necessarily have attempted to use force? No.

*United States v. St. Hubert*, 918 F.3d 1174, 1212 (11th Cir. 2019) (J. Pryor, dissenting from denial of rehearing en banc).

Finally, the Government contends that the Elements Clause defines a crime of violence as one that "has as an element . . . *attempted use* . . . of physical force." *See* Govt. Opp. at 20 (quoting 18 U.S.C. § 924(c)(3)(A)); *see also Simmons v. United States*, No. 08-CR-1133 (AKH), 2019 WL 6051443 at *4 (S.D.N.Y. Nov. 15, 2019) ("Section 924(c) expressly includes 'attempted use' of force in its definition."). However, the fact that the Elements Clause includes the words "attempted use" of force does not change the fact that nothing requires the Government to prove that a defendant actually attempted to use force (through his conduct, not merely his intention) to convict that defendant of attempted Hobbs Act robbery. To the contrary, there is "minimum criminal conduct" that would suffice for such a conviction that does not

merely his intention) to convict that defendant of attempted Hobbs Act robbery. To the contrary, there is "minimum criminal conduct" that would suffice for such a conviction that does not involve the "use, attempted use, or threatened use" of force. *See Lofton*, 2020 WL 362348, at *8 (discussing cases in which sufficient evidence existed for attempted Hobbs Act robbery in the absence of "the use, attempted use, or threatened use" of physical force).

Ultimately, the Government's position is at odds with the principle outlined in *Davis* that inchoate crimes—such as conspiracy or attempt—cannot be crimes of violence under the Elements Clause because they do not require as an *element* of the offense the use, attempted use, or threatened used of force. Accordingly, Cheese's motion to dismiss Count Twelve is granted, and Counts Eight, Ten, Twelve, and Fourteen are dismissed as to all Defendants.

## III.    CHEESE'S MOTION TO SEVER

Cheese also moves for severance under Rule 8(b), or, in the alternative, Rule 14, of the Federal Rules of Criminal Procedure.

### A.    Legal Standard

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of multiple counts and multiple defendants in a single indictment. Under Rule 8(b), multiple defendants who allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" may be charged in a single indictment. Fed. R. Crim. P. 8(b). Furthermore, the "defendants may be charged in one or more counts together or separately," and "[a]ll defendants need not be charged in each count." *Id.* Rule 8(b) does not require a common goal or conspiracy, but rather "requires only that the counts be connected by common facts or participants *or* that they arise out of a common plan or scheme." *United States v. Ferrarini*, 9 F. Supp 2d. 284, 292 (S.D.N.Y. 1998) (citing *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.

1989)); *see also United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) ("[W]e apply . . . a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both the defendants resulting from joinder.") (citations omitted). And as the Supreme Court has observed, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also id.* ("Joint trials . . . promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987) (internal quotation marks omitted))).

Under Rule 14 of the Federal Rules of Criminal Procedure, however, if "consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "In order to succeed on a motion for severance, a defendant must show that the prejudice from a joint trial is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Defreitas*, 701 F. Supp. 2d 309, 316 (E.D.N.Y. 2010) (quoting *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (internal quotation marks omitted)); *see also United States v. Cardascia*, 951 F.2d 474, 482-83 (2d Cir. 1991) (noting that the risk of prejudice is generally outweighed by concerns about judicial economy, the risk of inconsistent verdicts, and the favorable position that later-tried defendants obtain from familiarity with prosecution strategy). Thus, defendants seeking severance must show "not simply some prejudice, but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980) (internal quotation marks omitted)); *see also Walker*, 142 F.3d at 110 (describing defendants' burden as

9

"heavy"). The decision regarding whether to sever the defendants' trial is a matter committed to the "sound discretion" of the district court and is "virtually unreviewable." *United States v. James*, 712 F.3d 79, 104 (2d Cir. 2013) (citation omitted).

## B. Discussion

Joinder of Cheese with the other defendants in this case was proper under Rule 8. While it is true that Cheese did not participate in any additional robberies for which his co-defendants have been indicted, the robbery Cheese is alleged to have been involved with and the other robberies enumerated in the indictment plainly are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Rittweger*, 524 F.3d at 177. Namely, all the robberies charged in the indictment are "home invasion robberies of either purported drug stash houses or jewelry store owners where co-conspirators brandished firearms and caused physical injury to victims." (Opp. at 11.) Therefore, joinder under Rule 8(b) was proper.

Cheese argues, however, that the court should nonetheless sever his trial under Rule 14 because of the risk of substantial spillover prejudice. (*See* Mot. at 13.) According to Cheese, a joint trial would result in "significant amounts of evidence admitted against [Cheese's] new co-defendants that would otherwise be inadmissible against Mr. Cheese." (*Id.* at 14). Such evidence might include information about the Bloods street gang (of which many of Cheese's co-defendants are alleged to have been members) and the other eleven robberies with which Mr. Cheese has not been charged. (*Id.*)

Yet, courts have long held that "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Spinelli*, 352 F.3d at 56 (quoting *United States v. Carson*, 702 F.3d 351, 367 (2d Cir. 1983) (internal quotation marks omitted)). In addition, to the extent a risk of spillover prejudice exists, the court is confident that

an explicit limiting instruction to the jury will "cure any risk of prejudice." *Zafiro*, 506 U.S. at 539; *see also Rittweger*, 524 F. 3d at 179 (finding no prejudice where "the district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately"); *United States v. Diaz*, 176 F.3d 52, 104 (2d Cir. 1999) ("[E]ven when the risk of prejudice is high, measures . . . such as limiting instructions, often will suffice to cure any risk of prejudice" (internal quotations omitted)). The court therefore declines Cheese's invitation to sever his trial.

### C.     Motion to Sever – Speedy Trial Act

Cheese next argues that severance is warranted because any delay in his trial after the court decides the instant motions would be unreasonable under the Speedy Trial Act, 18 U.S.C. § 3161.

### 1.     Legal Background

The Speedy Trial Act (the "Act") provides detailed time limits within which prosecutors must bring a criminal case to trial. The Act "requires that a defendant's trial begin within seventy days of his indictment or his first appearance before a judicial officer, whichever is later." *United States v. Holley*, 813 F.3d 117, 120 (2d Cir. 2016) (citing 18 U.S.C. § 3161(c)(1)). The Act, however, sets forth certain periods of delay that "shall be excluded" from the seventy-day speedy trial clock, including "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).

The Second Circuit has held that in the absence of severance, any excludable delay as to one defendant applies to all co-defendants, such that the case is governed by a single speedy trial

clock. *See United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986) ("[D]elay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants.") (citing *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983))). A claim of unreasonable speedy trial delay attributable to co-defendants under § 3161(h)(6) is considered in light of the congressional intent "to make sure that [the Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3161." *Pena*, 793 F.2d at 489 (citing S. Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974)); *see also United States v. Stone*, No. 05-CR-401 (ILG), 2006 WL 436012, at *6 (E.D.N.Y. Feb. 22, 2006).

Given the court's denial of Cheese's motion to sever, the court considers whether the delay attributable to Cheese's co-defendants is reasonable. Cheese argues that he has thus far waited 19 months for his case to be brought to trial, and that any further delay after the court decides the instant motions to set a trial date would not be reasonable. (*See* Mem. at 17.) However, at no time between the Original Indictment and the filing of the instant motions has Cheese asked for a trial date, and he has consented to every request for exclusion of time under the Act (for, *inter alia,* discovery proceedings, plea negotiations, and motion practice) until January 23, 2020. The court thus finds that, barring an unforeseen change in circumstances, any delay between January 23, 2020—the date at which any relevant delay for speedy trial purposes would begin—and a date that would accommodate a joint trial with Cheese's co-defendants is reasonable and justified in light of the complexity of the case and the joinder of defendants. *See United States v. Minaya*, 395 F. Supp. 2d 28, 41 (S.D.N.Y. 2005) (denying motion to sever and noting that "[i]n any multi-defendant case . . . it is almost inevitable that the period of pre-trial

detention will be longer than in an action involving only one defendant"). Therefore, Cheese's motion to sever is denied.

## IV.    CHEESE'S *PRO SE* MOTIONS TO DISMISS THE INDICTMENT

Cheese has also filed *pro se* motions seeking to dismiss the Superseding Indictment. (*See* Def. Pro Se Mot; & Am. Def Pro Se Mot.)

The court has reviewed Cheese's *pro se* filings and finds that they are without merit. Cheese contends that the Government's decision to drop the Hobbs Act robbery conspiracy charge in the Superseding Indictment and include the attempted Hobbs Act robbery charge unduly influenced the grand jury. As the Government notes, however, it is well established that "the decision whether or not to prosecute, and what charge to file or being before a grand jury, generally rests entirely in [the prosecutor's] discretion." Opp. at 21 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Cheese's motions fail to demonstrate how the Government's decision to drop the conspiracy charge actually prejudiced him. Cheese argues that leaving out the "critical Hobbs Act [C]onspiracy [charge] [deprives him of] the benefit of [sic] newly decided Supreme Court's [*Davis*] case." (Pro Se Mot. at 1.) Yet, *Davis* only speaks to what crimes can serve as predicates for § 924(c), it does not preclude the indictment either for conspiracy or attempt to commit Hobbs Act robbery. Cheese also asserts that the court should either dismiss the indictment or conduct *in camera* review of the grand jury minutes because there "exists grave doubt whether the decision to indict was free from substantial influence of this false information." (Am. Pro Se Mot.).  Again, however, Cheese fails to show how the Government erred in its legal instructions to the grand jury. *See United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) ("Mere speculation that . . . the Government may have

improperly instructed the grand jury. . . falls far short of the showing to overcome the presumption of secrecy." (citations omitted)). Accordingly, Cheese's *pro se* motions are denied.

## V.  CONCLUSION

For the foregoing reasons, Cheese's (Dkt. 189) Motion to Dismiss Count Twelve of the Superseding Indictment and Motion to Sever is GRANTED IN PART and DENIED IN PART. Cheese's Motion to Dismiss Count Twelve is GRANTED, and Count Twelve is DISMISSED as to all Defendants. Because Counts Eight, Ten, and Fourteen suffer the same constitutional infirmity as Count Twelve, they are likewise DISMISSED as to all Defendants. Cheese's (Dkts. 67; 192) *pro se* Motions to Dismiss the Indictment are DENIED.


SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      February 1 2, 2020

NICHOLAS G. GARAUFIS
United States District Judge